UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.: 8:15-cv-00406-SDM-JSS

LANCET INDEMNITY RISK RETENTION
GROUP, INC.,

    Plaintiff,

vs.

ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY

    Defendant.

_____

**LANCET'SANSWER IN OPPOSITION
TO ALLIED WORLD'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, LANCET INDEMNITY RISK RETENTION GROUP, INC. ("LANCET"), by and through undersigned counsel and pursuant Fed.R.Civ.P. 56, hereby Answers in Opposition the Defendant, ALLIED WORLD SURPLUS LINES INSURANCE COMPANY's ("ALLIED WORLD"), Motion for Summary Judgment. In opposition, LANCET states:

**INTRODUCTION**

LANCET and ALLIED WORLD agree that the questions before the Court are issues of law and can be decided upon these cross motions for summary judgment. [D.E. 22, 24]. LANCET, throughout the course of this Answer in Opposition, cites to the documents filed by ALLIED WORLD [D.E. 22, 22-1, 22-2]. However, LANCET also refers the Court to its own Motion for Summary Judgment [D.E. 24] and the citations contained therein.

ALLIED WORLD insured Hollywood Diagnostics under a claims made policy. During that policy period, a lawsuit was filed against Hollywood Diagnostics, and ALLIED WORLD paid to defend and settle that lawsuit. ALLIED WORLD now claims that LANCET's policy,

1

which had expired, should provide coverage, that ALLIED WORLD's own policy did not provide coverage, and that the subrogation clause within ALLIED WORLD's policy conferred upon it a breach of contract action as well as a statutory right to attorney's fees.

ALLIED WORLD's Motion for Summary Judgment fails because:

- ALLIED WORLD demonstrates that no claim was made within LANCET's policy;

- ALLIED WORLD admits that it received the claim during its policy period and only notified LANCET after LANCET's policy had expired;

- ALLIED WORLD reserved it rights to contest coverage, but it did not exercise those rights and voluntarily paid the claim, destroying any right of subrogation;

- ALLIED WORLD fails to demonstrate why its policy does not provide coverage and an independent duty to settle as it did; and

- ALLIED WORLD failed to obtain an assignment from its insured and cannot be subrogated to a breach of contract claim or statutory attorney's fees.

For all of these reasons, ALLIED WORLD's Motion for Summary Judgment should be denied, and LANCET's Motion for Summary [D.E. 24] should be granted.

## **MEMORANDUM IN OPPOSITION**

**No Claim Was Made During LANCET's Policy**

ALLIED WORLD acknowledges that its insured was sued during its policy period, and after LANCET's policy expired. [D.E. 22 at p. 9]. ALLIED WORLD further acknowledges that it – not the insured – attempted to have LANCET cover the loss. [D.E. 22 at p. 9]. ALLIED WORLD acknowledges that, during LANCET's policy period, LANCET received only a statutory request for insurance information. [D.E. 22 at p. 3-4].

ALLIED WORLD is frustrated by the very risk inherent in a claims made policy. *Vozzcom, Inc. v Beazley Ins. Co., Inc.*, 666 F.Supp.2d 1321, 1330 (S.D. Fla. 2009). To quote the

2

*Vozzcom* Court for the instant context: "a claim had been brewing and was ripe to erupt before [ALLIED WORLD's] policy period, but [the claim was] asserted only after [ALLIED WORLD's] policy period began." *Id*. Accordingly, ALLIED WORLD has attempted to abuse the facts and improperly stretch its subrogation clause in an effort to recoup those funds duly paid on behalf of its insured. [D.E. 22 at p.8].

In support of its position, ALLIED WORLD clings to a single argument: LANCET received a statutory request for insurance information which referenced "both a claim for damages and a request to turn the letters over to insurers". [D.E. 22 at p.12]. This, ALLIED WORLD argues, meets the definition of "Claim" within Lancet's policy. [D.E. 22 at p.12]. Analysis of ALLIED WORLD's position need go no further.

LANCET's policy defines "Claim" as a written notice "alleging that such person or entity has been damaged by an Insured and demanding monetary damages or notifying the Insured of the intention to hold an Insured responsible for an occurrence; or the filing of a civil lawsuit or arbitration proceeding seeking monetary damages." [D.E. 22 at p.5]. Therefore, unless a suit or arbitration is filed, a "Claim" must include:

1) An **allegation** that Hollywood Diagnostics is liable for damages; and
2) An instant **demand** for monetary damages **or an intention** to hold Hollywood Diagnostics responsible for future, unspecified damages.

The request for insurance information contains none of the requirements. Requesting that a statutory insurance request be turned over to insurers is simply part and parcel of seeking insurance disclosure. *See* §627.4137, Fla. Stat. (2010). Investigating a potential, future claim against undetermined parties does not equal an allegation that the insured damaged someone.

ALLIED WORLD does not allege that the insurance disclosure request contained a demand for monetary compensation. ALLIED WORLD suggests no expression of intent to seek

unspecified damages and acknowledges that no lawsuit was brought during LANCET's policy period. [D.E. 22 at pp.3, 4, 9, 12]. ALLIED WORLD demonstrates that the request for insurance information only noted an investigation of a claim, and did not so much as allege that allegations may follow against this particular insured. [D.E. 22 at p.12].

Neither party could find a single instance when a statutory request for insurance information was deemed a "claim" as a matter of law. The closest case on point, *Myers v. Interstate Fire & Cas. Co.*, refused to find that a request for statutory insurance information was a "claim", even when coupled with a request for recorded statements. *Myers v. Interstate Fire & Cas. Co.,* 2008 WL276055 (N.D. Fla. 2008). To save time, LANCET incorporates by reference its previous analysis of the limited case law on point. [D.E. 24 at p. 9-12].

Common sense dictates that a statutory request for insurance information is not a claim as a matter of law, and LANCET urges this Court to rule as much. A request for insurance information is a seminal, prerequisite act to determine which potentially liable parties have insurance coverage. It would be foolish to paint the landscape of liability before one had an understanding of the parties' ability to pay, which is why it was not done in this instance. If insurers were to deem each request for insurance a "claim" for claims-made purposes, they must charge premiums as if each request, with nothing more, will forever trigger coverage during that policy's period. This is not only contrary to the purpose of a claims made policy, it defeats the savings intended by purchasing a claims made policy. *Vozzcom*, 666 F.Supp.2d at 1330.

ALLIED WORLD also argues that LANCET's policy contains a Notice Provision clause requiring certain information from the insured. [D.E. 22 at p.15]. That Notice Provision requires the insured to notify LANCET of the reason why it believes a claim has been or may be made. [D.E. 22 at p.16]. Because some of the additional information required from an insured includes reasons why a claim may be made, ALLIED WORLD argues that LANCET's policy provides

4

coverage for claims which have not yet been made. *Id.* However, the Notice Provision twice reiterates that an allegation of liability must be accompanied by a demand for money damages, an intent to hold the insured liable for unspecified damages or a lawsuit. [D.E. 22 at pp.15-16]. ALLIED WORLD then suggests that an investigation is the same as an allegation. It is not. But even if it were, there was still no demand for money damages, no intent to hold the insured liable for future, unspecified damages and no lawsuit.

A word must be said about ALLIED WORLD's argument regarding LANCET's response to the statutory request for insurance information. [D.E. 22 at p.4]. ALLIED WORLD argues that LANCET identified the matter as Zoya Shamay v Hollywood Diagnostic Center, acknowledged the named and additional insureds, set forth the coverage limits and that LANCET knew of no other insurer which may or could provide coverage for the claims asserted in question. [D.E. 22 at p.4]. Note that, at the time the response was drafted, LANCET's policy was still in effect, and if a "Claim" had been submitted, would have provided coverage. But it seems that ALLIED WORLD wishes to imply that LANCET's response can somehow convert a non-claim to a "Claim".

LANCET's response is irrelevant to whether the insured or anyone on behalf of the insured tendered a timely "Claim". The only written document received by LANCET from the insured – at any time – was the request for information. Extraneous evidence of LANCET's intent is neither relevant nor admissible and should be excluded pursuant Rule 56.

Most importantly, LANCET's response tracks the language of §627.4137, mimicking its requirements paragraph by paragraph. That statute states that the insurer "shall disclose the name and coverage of each known insurer to the claimant." Accordingly, LANCET stated that it knew of no other insurer for the claims presented. This does not mean that every request will turn into a claim, nor does it mean that every requester is a claimant. It certainly does not mean

the request meets the definition of "Claim" within LANCET's policy, and any suggestion otherwise is without merit.

**ALLIED WORLD's Policy Provides Coverage**

ALLIED WORLD reserved its rights to deny coverage and withdraw the defense. [D.E. 22-1 at pp.4, 68]. In the end, it did neither. Nor did it file this declaratory judgment action to determine whether its policy or LANCET's would apply. Instead, ALLIED WORLD paid the claim. [D.E. 22-1 at p. 5].

By acknowledging that a claim was made during its policy period, ALLIED WORLD admits that its policy was triggered. [D.E. 22-1 at p. 4]. ALLIED WORLD claims to have investigated whether exclusions within its policy would bar coverage. [D.E. 22-1 at p. 4]. But it failed to exercise exclusions against its insured. It asked LANCET to cover its obligations, and when LANCET refused, ALLIED WORLD paid the claim. [D.E. 22-1 at p. 4-5].

ALLIED WORLD waived its coverage defenses. ALLIED WORLD argues that its earlier reservation of rights was sufficient to defeat waiver, and cites to a Fifth Circuit case applying Louisiana law. *Employers Mut. Liab. Ins. Co. of Wisconsin v. Sears Roebuck & Co.*, 621 F.2d 746, 747 (5th Cir. 1980). It does not appear that this cited opinion is relevant to our analysis, as it seems to interpret a claims administration statute or doctrine in Louisiana law. *Id*. Even if it were on point, the *Sears* court suggests that only by agreement during settlement could ALLIED WORLD have preserved its coverage defenses. *Id*.

ALLIED WORLD now seeks to enforce its exclusions against LANCET. The exclusions purport to apply to any matter "reported to, or in accordance with, any policy or insurance or policy or program of self-insurance in effect prior to the Inception Date of this Policy . . ." or "any acts, errors, omissions or Occurrences taking place the earlier of the Inception Date; or the Inception Date of the first policy issued by the Insurer to the Insured, of which this policy is a

renewal; if any Insured on or before such date knew or reasonably could have foreseen that such act, error, or omission or Occurrence might result in a Claim." [D.E. 22 at pp.7-8]. ALLIED WORLD makes no attempt to argue that the insured knew or objectively, reasonably could have foreseen that the events would result in a claim. Accordingly, the exclusions cannot apply.

The documents filed by ALLIED WORLD establish an interesting set of facts. The care rendered to the patient was in September of 2011. [D.E. 22-2 at p.7]. This predates even LANCET's policy. [D.E. 22-2 at p. 13]. LANCET's policy contains nearly identical exclusions, so if they apply for ALLIED WORLD, then LANCET could enforce them as well. [D.E. 22-2 at p.35]. But both ALLIED WORLD and LANCET included a retroactive date of December 6, 2006, which obviates these exclusions under these circumstances. [D.E. 22-2 at p.14 and D.E. 22-1 at p.9]. This suggests an important reason why ALLIED WORLD did not attempt to enforce these exclusions against its insured.

If ALLIED WORLD cannot enforce its exclusions, and even if the request for insurance information triggered LANCET's policy, ALLIED WORLD would have an independent duty of coverage, and Florida does not recognize contribution among co-insurers. *Continental Cas. Co. v. United Pac. Ins. Co.*, 637 So. 2d 270 (Fla. 5th DCA 1994). At the very least, ALLIED WORLD has failed to prove that its payments were not voluntary. Reserving rights to deny a claim and withdraw defense means nothing if the rights are not eventually executed.

**ALLIED WORLD is Not Subrogated To Breach Of Contract or Statutory Claims**

ALLIED WORLD seeks declaratory relief, and LANCET agrees that it has standing to do so. However, ALLIED WORLD improperly seeks damages for breach of contract and claims that it is subrogated to rights under §627.428, Fla. Stat. [D.E. 22 at pp. 18, 21]. As a basis, ALLIED WORLD cites to its subrogation clause which states "in the event of any **payment**

7

**hereunder**, [ALLIED WORLD] shall be subrogated to the extent of any payment to all of the rights of recovery of [Hollywood Diagnostics]." [D.E. 22 at p. 8 (emphasis added)].

The circularity of the argument cannot be ignored. If ALLIED WORLD is to have subrogation rights, it must have paid under the terms of its policy. The subrogation clause does not apply if ALLIED WORLD paid out of the goodness of its heart, as is often suggested in its brief and "declaration" of its corporate representative. [D.E. 22 at p.1-2 and D.E. 22-1 at p.4-5]. By its own arguments, it obtained no contractual subrogation rights.

But even if it waived its exclusions and paid under the terms of its policy, ALLIED WORLD could not have obtained either a claim for breach of contract or a statutory right to attorney's fees. The mutual insured, Hollywood Diagnostics, would have no claim for breach of contract against LANCET because it obtained a defense and indemnity from ALLIED WORLD. Under no theory could the insured seek a second defense or second indemnity from LANCET, and the undisputed facts show that it did not do so. Therefore, when ALLIED WORLD paid, the insured held no claim against LANCET, and there was no right of contribution among co-insurers.

Similarly, a right of attorney's fees pursuant §627.428, Fla. Stat. could not have been transferred. *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 429 F.Supp.2d 1274, 1290 (M.D. Fla. 2005). Hollywood Diagnostics filed no suit against LANCET entitling it to fees pursuant the statute, and sought coverage only under ALLIED WORLD's policy. [D.E. 22 at p. 9]. That statute, moreover, is to be strictly construed as an aberration of common law. ALLIED WORLD is neither an insured, an omnibus insured nor a third party beneficiary of LANCET's policy, as required by the statute. [D.E. 22 at p. 21], *Essex Builders*, 429 F.Supp.2d at 1289-90.

ALLIED WORLD did not advance funds under protest and in exchange for an assignment of rights against LANCET. Such an "advance" has only theoretical application, and

8

may pose more problems than ALLIED WORLD faces in its current situation. But without an assignment, ALLIED WORLD has no claim for breach of contract and no standing to seek fees under §627.428, Fla. Stat.

## CONCLUSION

ALLIED WORLD issued a policy, received a claim, defended its insured and settled the claim. This business model is more profitable when someone else pays. So it seeks to find coverage under LANCET's policy.

Since the only document received during LANCET's policy was a statutory request for insurance information, ALLIED WORLD urges this Court to be the first to declare that such a request can be a "Claim". But the request should not be a claim as a matter of law, and certainly does not fit the definition of "Claim" under LANCET's policy.

Also, even if it were a claim, ALLIED WORLD had an independent duty of coverage, and cannot seek contribution from a co-insurer. Finally, ALLIED WORLD cannot be subrogated to breach of contract claims or statutory insurance fees. For all these reasons, ALLIED WORLD's Motion for Summary Judgment should be denied and LANCET's Motion for Summary Judgment should be granted.

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2014, I provided the foregoing document via E-mail to Heidi Hudson Raschke, Esquire, and Steven J. Brodie, Esquire, CARLTON FIELDS JORDEN BURT, P.A., at hraschke@cfjblaw.com; sbrodie@cfjblaw.com; ldelpino@cfjblaw.com; pparrey@cfjblaw.com; and tpaecf@cfdom.net.

Respectfully Submitted,

/s/ *Bruce A. Aebel*
Bruce A. Aebel, Esquire
Bar Number: 0066435
BANKER LOPEZ GASSLER P.A.

501 East Kennedy Blvd., Suite 1500
Tampa, FL  33602-5239
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Email:  baebel@bankerlopez.com
Attorney for Plaintiff