## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| LANCET INDEMNITY RISK RETENTION GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED WORLD SURPLUS LINES INSURANCE COMPANY,<br><br>Defendant. | Case No. 8:15-cv-00406-SDM-JSS |

## ALLIED WORLD SURPLUS LINES INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, formerly known as Darwin Select Insurance Company ("Allied World"), files its Response in Opposition to Plaintiff LANCET INDEMNITY RISK RETENTION GROUP, INC.'S ("Lancet") Motion for Summary Judgment and states that Lancet's Motion should be denied because the undisputed facts and law confirm that the claim brought against Lancet's former insured, National Nuclear Centers, Inc. dba Hollywood Diagnostics Urgent Care ("Hollywood Diagnostics"), is covered under the insurance policy Lancet issued to Hollywood Diagnostics and is excluded from the insurance policy Allied World later issued to Hollywood Diagnostics. Accordingly, Lancet is liable to Allied World for the amounts Allied World spent defending and settling the underlying action against Hollywood Diagnostics when Lancet wrongfully refused to defend its insured.

In sum, the September 26, 2012 demand letters, from the attorney for the surviving spouse of a deceased patient, sent to Hollywood Diagnostics and Eric Lloyd, MD, an additional insured under the policy, and forwarded to Lancet, constitute a "Claim" under the definition in the insurance policy Lancet issued to Hollywood Diagnostics. At a minimum, these letters provided Lancet timely notice during its policy period of the circumstances leading to the lawsuit ultimately brought by Mr. Beniamin Shamay against Hollywood Diagnostics (the "Underlying Action"). Therefore, the September 26, 2012 letters also constitute a "Claim" under the notice provisions of the Lancet Policy. In contrast, Allied World's Policy excludes any defense and indemnity obligation by Allied World to Hollywood Diagnostics and, therefore, Allied World is entitled to contribution for the monies it was forced to spend based on Lancet's wrongful refusal to defend its insured. Because the Lancet Policy provides defense and indemnity coverage for the Hollywood Diagnostics Claim related to the Underlying Action, Lancet is liable to Allied World for the amounts Allied World spent defending and settling the Underlying Action.

## **INCORPORATED MEMORANDUM OF LAW**

The factual background of this matter is described in detail in Allied World's Motion for Summary Judgment and Allied World incorporates, and does not restate, those undisputed facts here. (DE 22, pp. 3-11.)

In its Motion for Summary Judgment, Lancet argues that the September 26, 2012 letters do not constitute a Claim or notice of circumstances that may result in a Claim under the Lancet Policy and are instead solely statutory requests for insurance information under Florida law. (DE 24, ¶¶ 5-6.) Lancet argues that the real issue in these opposing motions is

whether a statutory request for insurance is a claim under Florida law. (*Id.*) Lancet further argues that <u>even if</u> the September 26, 2012 letters are a "Claim" under Lancet's Policy that Allied World nevertheless may not recover against Lancet because (1) Florida law does not recognize contribution between co-insurers; (2) Allied World was independently obligated to pay for the Hollywood Diagnostics claim under its policy; and (3) Allied World cannot be subrogated to a breach of contract claim.

Lancet's Motion should be denied because Florida law establishes that the September 26, 2012 letters were a Claim or notice of circumstances of a Claim under the Lancet Policy. Because the Claim was made under Lancet's Policy, it is not a claim first made during the Allied World Policy Period, and Lancet and Allied World are not co-insurers. Indeed, Allied World's Policy unambiguously excludes coverage for the Underlying Action, so Allied World was not independently obligated to Hollywood Diagnostics. For these reasons, Allied World is entitled to contribution from Lancet. Lancet's Motion should be denied and Allied World is entitled to the relief sought in its simultaneously filed Motion based on its declaratory judgment and equitable contribution claims. In the alternative, Allied World asserts that it is subrogated to Hollywood Diagnostics' breach of contract claim against Lancet. Based on Lancet's wrongful refusal to provide coverage for Hollywood Diagnostics' claim, Allied World is entitled to recover the amounts it spent to defend and settle the Underlying Matter. For these reasons, as discussed in more detail below, Lancet's Motion should be denied, and Allied World's Motion should be granted.

# I.      The September 26, 2012 Letters Are A Claim Under The Lancet Policy.

Contrary to Lancet's suggestion otherwise, this case does not involve a case of first impression, nor is the issue whether a statutory request for information is a claim. Rather, the determinative issue in this case is whether the September 26, 2012 letters from counsel for Mr. Shamay to Hollywood Diagnostics and Dr. Lloyd constitute a Claim or notice of circumstances of a Claim under provisions 3(d)(1) and (6 ) of the Lancet Policy. (DE 1-2; DE 4.) Lancet's attempts to characterize the issue more broadly as an issue of first impression on whether a statutory request for insurance under Florida Statute § 627.4137 is a claim under Florida law asks the court to overlook the policy language and should be disregarded.[1] Rather, the September 26, 2012 letters constitute a Claim under the Lancet Policy's definition of Claim and Florida law because they contain both a claim for damages and a request to turn the letters over to the insurer.

Lancet relies on general distinctions between "claims made and reported" and "occurrence" insurance policies under Florida law to argue that claims made insurance policies are intended to close out the possibility of insurer liability for claims reported after the policy expires. Allied World does not disagree with Lancet's general statement of these principles. Claims made and reported policies are, however, subject to the specific provisions in each individual policy, and this case is no exception. Here, the central dispute involves the application of the "Claim" and notice of circumstances of a Claim provisions in Lancet's Policy to the undisputed facts.

---

[1] Allied World acknowledges that a request for insurance information pursuant to Fla. Stat. § 627.4137 is, by itself, insufficient to constitute a claim under the Lancet Policy. However, based on the language of the Lancet Policy and the contents of the letters at issue, these specific letters do constitute a Claim under the Lancet Policy.

The Lancet Policy defines "Claim," in pertinent part, as:

(1)    a written notice received by an **Insured**, and forwarded to us, from a person or entity, or on behalf of such person or entity by another party legally empowered to act on their behalf, alleging that such person or entity has been damaged by an **Insured** and demanding monetary damages or notifying the **Insured** of an intention to hold an **Insured** responsible for an **Occurrence**; or

\* \* \*

Notifying us of an **Occurrence** that may result in a **Claim** as required under "Section 6 – Notice Provisions" does not constitute a **Claim** first made hereunder unless it incorporates items 1 or 2 above.

(DE 1-2 at § 3(d)(1) & (2).)

Thus, to qualify as a "Claim" the September 26, 2012 letters must (i) be a written notice received by an Insured; (ii) be forwarded to Lancet; (iii) be sent by an entity, person or their representative; (iv) allege that the person or entity has been damaged by an Insured; and (v) demand money damages; or (vi) notify the insured of an intention to hold an Insured responsible for an Occurrence [defined as an "act, error or omission in the furnishing of Professional Services…"]. (*Id*. at § (p).)

That the September 26, 2012 letters comply with elements (i) through (iii) is not disputed by Lancet. The letters also allege damage caused by the insured because they state that Zoya Shamay is deceased and her surviving spouse's attorneys are investigating a "claim for damages . . . arising out of care provided to Mrs. Shamay." (DE 22-2, pp. 7-10.) The letters state that they should be forwarded to the insurance companies of the insured that "provide you with coverage for this incident." (*Id.*) Thus, these letters plainly allege that Mrs. Shamay was damaged by an incident attributable to Hollywood Diagnostics' and Dr. Lloyd's care of Mrs. Shamay during the 2011-2012 timeframe.

Finally, to constitute a "Claim" under the Lancet Policy, the letters must contain either a claim for money damages or an intention to hold Hollywood Diagnostics and/or Dr. Lloyd responsible for the incidents occurring during the medical care. The September 26, 2012 letters fulfill both of these requirements. First, the letters state that there is a "claim for money damages," and, state that the claim stems from incidents in care provided to Mrs. Shamay by Hollywood Diagnostics and Dr. Lloyd and that such letters should be forwarded to the appropriate insurance companies for coverage of the incidents, i.e., for payment once liability is found. (*Id.*) Second, the letters demonstrate an intention to hold the insured responsible by explicitly notifying Hollywood Diagnostics and Dr. Lloyd that they should send the letters to their insurance companies for coverage or the insurer may refuse to protect their interests relating to the incident during the care provided to Mrs. Shamay. (*Id*.) These statements exhibit an intention to hold Hollywood Diagnostics, Dr. Lloyd, and/or their insurance companies responsible for incidents involving the care provided to Mrs. Shamay.

Notwithstanding the plain language of the September 26, 2012 letters, Lancet argues in its Motion that there is no indication in the letters that Hollywood Diagnostics and Dr. Lloyd were involved in the care of Mrs. Shamay. (DE 24, p. 8.) This assumption is contradicted by the September 26, 2012 letters themselves which were sent to Hollywood Diagnostics and Dr. Lloyd, reference a patient (Mrs. Shamay) treated by Hollywood Diagnostics and Dr. Lloyd, reference timeframes of that treatment, and direct these insureds to notify their insurers of the incidents noting they "may provide you with coverage for this incident" and "protect your rights." (DE 22-2, pp. 7-11.)

Lancet also argues there is no "expression of intention" to hold Hollywood Diagnostics or Dr. Lloyd responsible in the letters. (DE 24, p. 8.) Again, this argument is refuted by the actual existence of and language in these letters. An attorney for the surviving spouse of a deceased patient would only send letters to Hollywood Diagnostics and Dr. Lloyd discussing claims for damages based on care they provided to that patient and notifying them that they need to provide information on coverage for the incident and inform their insurance companies to "protect your interests" to exhibit a clear intention to hold them responsible (in whole or part) for the care they provided and the incidents referenced.

Lancet's arguments to the contrary seem to be reading additional requirements into the actual Policy definition based on its belief that a letter, such as this, may not serve as a request for insurance information pursuant to Florida statutes and as notice of a claim under the insurance policy definitions. However, the definition of Claim in the Lancet Policy does not require notification of a specific amount of money damages demanded or details on the alleged wrongdoing that Lancet would have this Court read into the policy. *See Myers v. Interstate Fire & Cas.Co.,* No. 8:06-CV-2347-T-30MAP, 2008 WL 276055, *4 (M.D. Fla. Jan. 30, 2008) (noting that a demand for money damages does not need to specify a particular amount unless <u>called for in the policy</u>).

Moreover, Lancet's suggestion that this Court should determine that a letter that includes a statutory request for insurance information may not trigger claims made policies asks this Court to ignore the language of the Lancet Policy itself and Florida law. Simply because a letter contains a statutory request for insurance information does not somehow preclude it from constituting a Claim in a claims made policy. Each letter received by an

insurance company from an insured or claimant must be analyzed pursuant to its language and the specific insurance policy language.

### A.    <u>Florida Law Supports a Finding That The Letters Are a Claim.</u>

In its Motion, Lancet tries to distinguish *Paradigm Ins. Co. v. P & C Ins. Sys., Inc.,* 747 So. 2d 1040 (Fla. 3d DCA 2000), cited by Allied World in its Motion, by arguing that the facts there clearly showed a demand for money damages, unlike here where no <u>specific</u> amount of money was demanded. (DE 24, p. 11.) However, the holding in *Paradigm* is not so limited. *Id*. at 1041.

In *Paradigm,* the court held that "a statement of a claim of negligence and resulting loss (in this case, a claimed failure of an insurance agency to procure liability insurance), followed by a request 'to turn this letter over to your errors and omissions insurance carrier for handling' amounts to a demand for money within the meaning of Paradigm's policy." 747 So. 2d at 1041 (*citing Herron v. Schutz Foss Architects,* 935 P.2d 1104 (Mont. 1997); *Rentmeester v. Wisconsin Lawyers Mut. Ins. Co.,* 473 N.W.2d 160 (Wis. Ct. App.1991)). Thus, the court held that identification of a loss <u>in combination with</u> direction to turn the letter over to the insured's insurance carrier for handling was what amounted to a demand for money. *Id.* This statement likely stemmed from the court's reliance on the *Herron*, 935 P.2d at 1104, decision it cited.

In *Herron*, the claimants' attorney wrote a letter to the insured stating that his office represented the claimants related to an accident and requested that the insured contact his malpractice insurance carrier and ask them to contact his office immediately to discuss "this claim." The claimants argued that the letter did not constitute a claim because no specific

demand for money or services was made in the letter pursuant to the policy language, which required a demand for money or services to constitute a claim. *Id.* at 99. The court held that even without specifics, the correspondence indicates that the claimants were seeking "compensatory payment" noting that otherwise there would be no reason for the claimant to ask the insured to contact his insurance carrier. *Id.* at 101.

*Paradigm* therefore recognizes that a demand for money need not include a specific damages demand, as Lancet argues, and that the correspondence itself should be analyzed to determine if the correspondence would indicate to the insured that the claimants are seeking monetary damages.

*Myers,* 2008 WL 276055, is similarly instructive. In that case, the letter at issue arguably contained both a notice of claim and a request for insurance information. In distinguishing *Paradigm*, and holding that the letter was not a claim, the *Myers* court emphasized the lack of a request to turn the letter over to the insured's insurance carrier, but nevertheless called it a "close call" on whether the letter constituted a claim. *Id.*

In contrast, the September 26, 2012 letters at issue here not only contain all of the elements in the *Myers* letter that the court there considered a "close call" on whether or not it constituted a claim, as well as a specific demand that the letters be forwarded to the insureds' insurance carriers. This is an additional fact the *Myers* court appeared to find dispositive in distinguishing *Paradigm*. As such, because the September 26, 2012 letters reference to a claim for damages in combination with direction to forward the letters to the insureds' insurance company, they constitute a Claim under the Lancet Policy.

Lancet's reliance on *National Fire Ins. Co. v. Bartolazo*, 27 F.3d 518 (11th Cir. 1994), and *Aguilar v. Royal Surplus Lines Ins. Co.*, No. 05-21465-CIVLENARD, 2006 WL 2038643 (Bankr. S.D. Fla. June 5, 2006), for defining what constitutes a demand for damages in this context is misplaced. *Bartolazo,* 27 F.3d at 518, simply involved requests for medical records to investigate a claim. And, unlike this case, there is no direct request to send the demand letter to the accused party's insurance carrier for coverage nor was there reference to a medical incident. *Id.* at 519, FN1.

Similarly, *Aguilar*, 2006 WL 2038643, involved a request for medical records to an entity and a catch all summary notification of potential claims to the insurance company just prior to the policy's expiration. *Id.* at *2. The court dismissed the arguments that these documents constituted claims under the insurance policy at issue which required a claim to be a "written demand for money or services…." *Id.* at 3. The court said that notification of a medical records request and the summary of potential claims could not be considered a claim without mention of any demand for money or services. *Id.* at *7.

Significantly, dicta in *Aguilar* supports Allied World's position. In addition to the medical records request and summary notice described above, claimant's counsel also sent a letter to an insured physician that included a request for insurance information under section 627.4137. This letter requested that it be turned over to the physician's insurer, however, it did not advise that there was a claim for damages being investigated other than reference to the fact that surgery was performed. *Id.* at *2. While not reaching the issue of whether this letter was a sufficient claim under the policy, the court noted, while analyzing *Paradigm*, that this letter requesting insurance information contrasted favorably regarding sufficiency to be a

claim against a mere request for medical records which was "nothing more than a preparatory act." *Id.* at *12, FN4.[2]

The September 26, 2012 letters contain all of the factual information required under the Lancet Policy "Claim" provisions: including the identity of the claimants and insureds, investigation of  a claim for damages arising out of care provided to a specific patient in a specific time frame who ultimately died, direction to the recipients of the letters who provided care to provide the claimant information regarding coverage for the incident and direction that they should forward the letter to the insurance company who "may provide you with coverage for this incident."  Under a plain reading of the Lancet Policy provisions and instructive Florida law analyzing what a demand for monetary damages is in this context, the September 26, 2012 letters constitute a Claim under the Lancet Policy, and Lancet's Motion should be denied.

> **B.**  **At A Minimum, The September 26, 2012 Letters Are Notice Of Circumstances Of A Claim Under The Lancet Policy.**

Even if the September 26, 2012 letters are not a Claim, they are, at a minimum, notice of circumstances of a Claim under the Lancet Policy.  The Notice Provision provides:

---

[2] Lancet's citation to the *Ramey, Clarendon* and *National Union* cases is similarly unhelpful. *Ramey v. Interstate Fire & Cas. Co.,* 32 F. Supp. 3d 1199, 1205 (S.D. Fla. 2013), involved a letter from an insured informing an insurer that an incident had occurred in treatment and another letter from the eventual claimant, which was never sent to the insurance company, requesting medical records and suggesting an intention to seek reimbursement.  In *Clarendon Nat'l Ins. Co. v. Muller*, 237 Fed. Appx. 451, 452 (11th Cir. 2007), the court held a letter that relayed concern about past legal representation and that it could lead to litigation was not a present demand under the policy language.  In *National Union, Florida Dept of Fin. Servcs v. Nat'l Union Fire Ins. Co. of Pittsburg, PA,* No. 4:11cv242/RS-WCS, 2012 WL 760606 (N.D. Fla. March 7, 2012), the letter asserted an intention to assert claims in the future.  The court there found it did not meet the definition of a present demand but did come under the notice of circumstances provisions in the policy. *Id.* at *4.

Duties in the event of a **Claim** or **Occurrence**:

Notifying us of an **Occurrence** or **Claim** does not provide coverage hereunder unless it contains:

(a)    written notice received by an Insured, and forwarded to us, from a person or entity, or on behalf of such person or entity by another party legally empowered to act on their behalf, alleging that such person or entity has been damaged by an **Insured** and demanding monetary damages or notifying the **Insured** of an intention to hold an Insured responsible for an **Occurrence** . . .

* * *

NOTICES TO THE COMPANY SHOULD INCLUDE (A) THE IDENTITY OF THE POTENTIAL CLAIMANT; (B) THE IDENTITY OF ALL **INSURED**(S) INVOLVED IN THE **OCCURRENCE**; (C) THE IDENTITY OF ANY WITNESS(ES) TO THE MATTER; (D) THE DATE, TIME, LOCATION AND A GENERAL DESCRIPTION OF THE CIRCUMSTANCES OF THE **OCCURRENCE**, INCLUDING A DESCRIPTION OF THE POSSIBLE INJURIES OR DAMAGES; (E) THE MANNER IN WHICH THE **INSURED** FIRST BECAME AWARE OF THE CIRCUMSTANCES; AND (F) THE REASON THE **INSURED** BELIEVES A **CLAIM** HAS BEEN OR MAY BE MADE.

**DEFENSE COSTS** INCURRED BY US UPON RECEIPT OF NOTICE OF AN **OCCURRENCE** WILL BE CONSIDERED TO BE PART OF THE **CLAIM** IN THE EVENT THAT A **CLAIM** DOES [SIC] PROPERLY MADE AND REPORTED UNDER THIS POLICY. . . .

(DE 1-2 § 6.)

The Lancet Policy requires notice identifying "the reason the Insured believes a Claim has been made **or may be made**." (*Id.*) (emphasis added). The September 26, 2012 letters comply with the definition of Claim as detailed above, and also include each of the elements identified in the Lancet Policy § 6 (A)-(F). The letters identify Beniamin Shamay as the potential claimant. (DE 22-2, pp. 7-11.) Hollywood Diagnostics and Dr. Lloyd are identified as the Insureds involved in the Occurrence. (*Id.*) Mr. Shamay's counsel provides the date, time, general description of the circumstances, and injury, by communicating that

Mrs. Shamay died, and that he is investigating a claim for damages arising out of the care provided to Mrs. Shamay in September 2011. (*Id.*) With respect to how Hollywood Diagnostics first became aware of the circumstances, and the reasons that Hollywood Diagnostics believes that a Claim may be made, the letters constitute the notice, and the content clearly demonstrate why Hollywood Diagnostics reasonably believed that a Claim would be filed against it. (*Id.*)

Accordingly, Hollywood Diagnostics provided Lancet timely notice of the circumstances that led to the Claim made during the Lancet Policy period and the Lancet Policy provides coverage for the Claim and Lancet's Motion should be denied.

**II.** **Allied World Is Entitled to Reimbursement for Amounts Spent Defending and Settling the Underlying Action.**

**A.** **The Plain Language Of Allied World's Policy Precludes Any Coverage For The Hollywood Diagnostics Claim For The Underlying Action.**

Lancet alternatively argues that even if the September 26, 2012 letters are a Claim under the Lancet Policy, which Lancet inappropriately rejected during its policy period, that Allied World is still liable because it had an independent duty to defend Hollywood Diagnostics under its policy or voluntarily paid to settle the claim.[3] However, that is not the case here. Allied World never had a contractual obligation to cover the Hollywood Diagnostic claims because the claim was made under Lancet's Policy,[4] and the Allied

---

[3] As discussed in Allied World's Motion for Summary judgment at page 18, even if Lancet is correct that Allied World had an independent duty to defend, which it did not, Lancet would still be liable for contribution for the settlement (indemnity) amount of $140,000.00 paid on behalf of the insured.

[4] This case is distinguishable from the cases cited by Lancet that indicate that a co-primary insurer cannot seek contribution for defense costs from another primary insurer. *Continental Cas. Co. v. United Pacific Ins. Co.*, 637 So. 2d 270 (Fla. 5th DCA 1994); *American Cas. Co.*

World's Policy excludes coverage for the Hollywood Diagnostics claim related to the Underlying Action. In addition, because Allied World defended pursuant to a complete reservation of rights Lancet's argument that the defense and payment was voluntary is negated, as a matter of law.

> 1. **Allied World never had a contractual obligation to defend or pay to settle the claim against Hollywood Diagnostics.**

As Allied World explained in its Motion for Summary Judgment at section III.A.1, Lancet and Allied World are not mutual primary insurers and the independent duty to defend of mutual primary insurers is not applicable where the defending insurer (Allied World) never had a duty to defend the insured under its policy. *See Colony Ins. Co. v. G & E Tires & Serv., Inc.,* 777 So. 2d 1034, 1038 (Fla. 1st DCA 2000) (holding that "[a]s to the claims that are not even potentially covered …. the insurer may indeed seek reimbursement for defense costs"); *see also Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate of Ins. No. 9214 v. Halikoytakis,* 8:09-CV-1081-T-17TGW, 2011 WL 7305888, at *2 (M.D. Fla. Dec. 21, 2011) *report and recommendation adopted,* 8:09-CV-1081-T-17TGW, 2012 WL 487464 (M.D. Fla. Feb. 2, 2012) (following the majority rule stated in *Colony* and *Jim Black & Assoc., Inc. v. Transcontinental Ins. Co.*, 932 So. 2d 516 (Fla. 2d DCA 2000), that an insurer "is entitled to reimbursement of fees and costs incurred in the defense of the insured if there was no duty to defend or indemnify").

A duty to defend is determined by the provisions of the policy and operative complaint. *Jones v. Florida Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 442-43 (Fla. 2005). The

---

*of Reading PA v. Health Care Indem., Inc.*, 613 F. Supp.2d 1310 (M.D. Fla. 2009). The Claim was made under Lancet's Policy, so coverage was not triggered under Allied World's Policy, and the insurers are <u>not</u> co-primary insurers.

plain language of the Allied World Policy demonstrates that Allied World did not have a duty to defend and that the Underlying Action is excluded from coverage.

First, subject to its terms, conditions and exclusions, the Allied World Policy provides coverage for **Loss** as a result of a **Claim** alleging a **Medical Professional Incident** provided, in pertinent part, that "such Claim is first made against the Insured during the Policy Period or any applicable Extended Reporting Period…" (DE 22-1 ¶ 3, p. 8 at § I.A.2).

The provisions of the Allied World Policy require that a Claim be made against Hollywood Diagnostics within the Allied World Policy Period. Looking at the operative complaint, the factual allegations reveal that the conduct at issue in the Underlying Action was performed in 2011 and that the true nature of Ms. Shamay's condition was discovered in August, 2012. As discussed above, the Claim related to the Underlying Action, was first made against insured Hollywood Diagnostics on or about September 26, 2012. It is moreover undisputed that the September 26, 2012 letters were received by Lancet by October of 2012. (DE 22-2, p. 4 at Nos. 1-3.) Allied World's Policy did not incept until December 6, 2012. (DE 22-1 ¶ 3, p. 8 at § Item 2.) The allegations of the complaint demonstrate that a Claim for the circumstances described in the Shamay Complaint was not first brought against Hollywood Diagnostics during the Policy Period of the Allied World Policy; instead it was first brought during the Lancet Policy period. Accordingly, there is no coverage as a matter of law under the Allied World Policy and no duty to defend.

Additionally, Exclusions F.2. & F.3. of the Allied World Policy also preclude coverage for the Underlying Action. These Exclusions provide:

As respects all Insuring Agreements . . . this Policy shall not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

\* \* \*

2.　any acts, errors, omissions, **Medical Professional Incidents**, **Occurrences**, facts, matters, events, suits or demands notified or reported to, or in accordance with, any policy or insurance or policy or program of self-insurance in effect prior to the Inception Date of this Policy[.]

3.　any acts, errors, omissions or **Occurrences** taking place the earlier of:

a.　the Inception Date; or

b.　the Inception Date of the first policy issued by the **Insurer** to the **Insured**, of which this Policy is a renewal;

if any **Insured** on or before such date knew or reasonably could have foreseen that such act, error, omission or **Occurrence** might result in a **Claim**[.]

(*Id.* at § IV. F.2.and F.3.)

Exclusion F.2. excludes coverage for any "acts, errors, omissions, **Medical Professional Incidents**, **Occurrences**, facts, matters, events, suits or demands that were reported to any insurer prior to the Inception Date" of the Allied World Policy of December 6, 2012. Since the September 26, 2012 letters are a Claim reported to Lancet under the Lancet Policy prior to the inception of the Allied World Policy, there is no coverage under the Allied World Policy.

In addition, Exclusion F.3. excludes coverage for any "any acts, errors, omissions or **Occurrences** taking place" earlier than the Inception Date of December 6, 2012 if the Insured (Hollywood Diagnostics) on or before December 6, 2012 "knew or reasonably could have foreseen that such act, error, omission or **Occurrence** might result in a **Claim**." As explained above, Hollywood Diagnostics and Dr. Lloyd were aware as of September 2012

(prior to the Allied World Inception Date) that the spouse of a patient who died following treatment by them was pursuing a claim for damages resulting from the care they provided. Lancet was aware of these same circumstances by October of 2012. Since the letters put Hollywood Diagnostics on notice in September 2012 that they and their insurance companies were being pursued for a claim for damages resulting from incidents in the medical care of Mrs. Shamay, Exclusion F.3. also precludes coverage under the Allied World Policy.

Lancet argues that the inclusion of the Retroactive Date in Allied World's Policy at Section I.A. contradicts and nullifies Exclusions F.2. and F.3., which exclude certain acts, omissions and claims prior to the Inception Date of December 6, 2012. Section I.A. states:

> The Insurer will pay on behalf of the Insured, Loss in excess of the Deductible stated in Item 4(a) of the Declarations and subject to the Limits of Liability set forth in Item 3(a) of the Declaration, which the Insured becomes legally obligated to pay as a result of a Claim alleging a Medical Professional Incident, provided always that
>
> 1. such Medical Professional Incident takes place on or after the Retroactive Date stated in Item 7(a) of the Declarations [December 6, 2006] and before the end of the Policy Period…..

(DE 22-1 ¶ 3, p. 37).

Lancet's argument, however, is contrary to the plain language of the Allied World Policy. The Policy must be read as a whole and cannot be applied piecemeal. *See Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.,* 874 So. 2d 26, 30 (Fla. 2d DCA 2004) ("the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders"). The Retroactive Date is not contradictory to the Exclusions since exclusions always operate to exclude coverage that may be otherwise available during the policy term if the exclusion did not exist. Moreover, in

order for Section I.A to apply to circumstances prior to December 6, 2012, Hollywood Diagnostics was required to provide Allied World with Notice in accordance with Section V.B.1 of the Allied Policy.  Under subsection V.B.1.a, a Claim must be <u>first made</u> to Allied World during its Policy Period. Under subsection V.B.1.b. notice must be provided during the Allied World Policy Period once Hollywood Diagnostics <u>first</u> became aware of any acts, errors, or omissions which may subsequently give rise to a Claim.  Here, the Claim was first made in the September 26, 2012 letters.  It is undisputable that the acts, errors or omissions which gave rise to the Underlying Action were contained in the September 26, 2012 letters and consequently not first reported to Allied World during its Policy period.[5]

## 2. Allied World's defense was not voluntary because it defended pursuant to a complete reservation of rights.

Allied World's defense of Hollywood Diagnostics was conducted pursuant to a complete reservation of rights (as to defense and indemnity) and Allied World was forced to defend the Underlying Action because of Lancet's refusal to fulfill its duty to, at a minimum, defend Hollywood Diagnostics in the Underlying Action. (DE 22-1 ¶¶ 8,11, pp. 66-79.) There is no waiver where an insurer defends and pays subject to a reservation of rights. *See Employers Mut. Liab. Ins. Co. of Wisconsin v. Sears, Roebuck & Co.,* 621 F.2d 746, 747 (5th Cir. 1980) (noting that waiver of non-coverage defenses occurs in a voluntary settlement between insurer and claimant unless the insurer otherwise protects its defenses).

---

[5] Lancet further states that if Exclusions F.2. and F.3. bar coverage for Allied World, then Lancet's "nearly identical" provisions in its policy somehow "moot[] this entire exercise." However, Lancet's exclusions would only apply to claims or notices made prior to its Policy. (DE 22-1 at p. 42.).  Since the Claim at issue was made during the Lancet policy period, such exclusions would not apply.  Moreover, this throwaway statement has no impact on Allied World's arguments under Exclusions F.2. and F.3.

Allied World repeatedly and consistently disclaimed liability and demanded that Lancet defend or participate in the defense of Hollywood Diagnostics. (DE 22-1, pp. 71-79.) Florida courts recognize that such actions preserve the right to equitable contribution. *See Lehman-Eastern Auto Rentals v. Brooks,* 370 So. 2d 14, 16 (Fla. 3d DCA 1979); *Airmanship, Inc. v. U.S. Aviation Underwriters, Inc.,* 559 So. 2d 89, 92 (Fla. 3d DCA 1990).

> **B.      Allied World is Subrogated to Hollywood Diagnostics' Breach of Contract Claim Against Lancet.**

Lancet suggests that Allied World has no claim for breach of contract against Lancet because Allied World provided a defense and indemnity to Hollywood Diagnostics. At its core, Lancet's argument is that it should be able to breach its contract without consequence because another insurer protected Lancet's insured. This position is not supported by analogous Florida law.

"Subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another." *Phoenix Ins. Co. v. Florida Farm Bureau Mut. Ins. Co.*, 558 So. 2d 1048, 1050 (Fla. 2d DCA 1990) (citing *Rebozo v. Royal Indem. Co.*, 369 So. 2d 644 (Fla. 3d DCA), *cert. denied*, 379 So. 2d 209 (Fla. 1979)). In this case, Allied World paid the legal obligation of Lancet, and it is entitled to recover. In comparable situations, Florida courts recognize the right of an excess carrier, who paid to defend  an insured, to stand in the shoes of the insured to recover from a primary insurer who wrongfully failed to provide coverage for the insured. *Id.* (citing *United States Auto Ass'n v. Hartford Ins. Co.*, 468 So. 2d 545 (Fla 5th DCA), *rev. denied*, 476 So. 2d 676 (Fla. 1985); *General Accident and Fire Life v. American Cas. Co.*, 390 So. 2d 761 (Fla. 3d DCA 1980), *rev. denied*, 399 So. 2d 1142 (Fla. 1981)). Similarly, as explained above, Lancet and Allied

World were not co-primary insurers. Instead, Allied World protected the interest of the insured to which Lancet was primarily obligated under its insurance policy. Lancet breached its policy to Hollywood Diagnostics, and Allied World is entitled to recover the amounts it spent in paying for Lancet's legal obligations.[6]

## CONCLUSION

The September 26, 2012 demand letters sent to Hollywood Diagnostics and Dr. Lloyd and forwarded to Lancet constitute a Claim under the Lancet Policy. Alternatively, the letters provided timely notice to Lancet of the circumstances that led to the Claim made by Mr. Shamay. For these alternative reasons, the Lancet Policy provides defense and indemnity coverage for the Underlying Action, and Lancet is liable to Allied World for the amounts it spent providing the defense and indemnity owed under the Lancet Policy. Allied World had no independent duty to defend or indemnify Hollywood Diagnostics based on the unambiguous terms of its Policy, and defended pursuant to a reservation of rights. Accordingly, Lancet's challenges to Allied World's equitable contribution claim fail as a matter of law. Moreover, Allied World is subrogated to Hollywood Diagnostics' breach of contract claim against Lancet for Lancet's wrongful refusal to provide coverage.

For these reasons, Lancet's Motion for Summary Judgment should be denied and Allied World's Motion for Summary Judgment should be granted.

---

[6] This case is not analogous to *Casualty Indem. Exchange v. Penrod Bros., Inc.*, 632 So. 2d 1046 (Fla. 3d DCA 1993), cited by Lancet, which held that a landlord's insurer could not assert a subrogation claim against the tenant for its failure to purchase insurance. The court noted that the tenant's failure to purchase insurance did not cause the fire. Rather, here Lancet breached its policy to Hollywood Diagnostics, and Allied World should recover.

Dated: March 4, 2016

/s/*Heidi H. Raschke*
Heidi Hudson Raschke
Florida Bar No.: 0061183
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone: (813) 223-7000
Facsimile: (813) 223-7000
E-mail: hraschke@cfjblaw.com

Steven J. Brodie
Florida Bar No.: 333069
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower
100 SE 2nd Street, Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Email: sbrodie@cfjblaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2016, I electronically filed the foregoing with the

Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in

this case including:

| | |
|---|---|
| *Attorneys for Plaintiff:*<br><br>Bruce A. Aebel, Esq.<br>Email: baebel@bankerlopez.com<br>Banker Lopez Gassler P.A.<br>501 East Kennedy Blvd., Suite 1500<br>Tampa, Florida 33602-5239<br>Telephone: (813) 221-1500<br>Facsimile: (813) 222-3066 | |

/s/*Heidi H. Raschke*
Heidi H. Raschke